**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **RANDY R. CARSON** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-0872** |
| **WARDEN LYNN COOPER** | **SECTION "B"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant

to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section**

**2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be

disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.    Factual and Procedural Background

The petitioner, Randy R. Carson ("Carson"), is a convicted inmate incarcerated in the

Avoyelles Correctional Center in Cottonport, Louisiana.[2]  On August 7, 2007, Carson was charged

by bill of information in St. Tammany Parish with one count of possession of cocaine, one count of

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

possession of hydrocodone in combination with one or more active non-narcotic ingredients, one count of possession of oxycodone, and one count of possession of clonazepam.[3]

On June 10, 2007, Brandie Peyton was driving a vehicle with several passengers, her infant daughter, her sisters, Chanelle and Priscilla Poche, and their friends, Virginia and Olivia, on Collins Boulevard, off of U.S. Highway 190 in St. Tammany Parish.[4] While Peyton was stopped at a red light and waiting to turn, she was rammed from behind by a vehicle driven by Carson. Peyton was sure that Carson was driving the vehicle, and that no one ran from his vehicle.

Carson exited his vehicle and told Peyton to move her car to the parking lot of a nearby Walgreens. He repeatedly asked her not to call the police. He even offered to pay her for the damages to her vehicle. Carson told her that he did not have his license and did not want to get into trouble for not having it with him. Peyton alerted her husband, Terry Peyton, a firefighter, about Carson's actions. Terry Peyton was unable to respond to the scene because he was in another area, but he alerted a local firefighter of the car accident.

David Bordes, Captain of Fire Patrol at the Northpark Station of Fire District 12, responded to the scene. When Captain Bordes went to check Carson, he was told, "Look, there's no damage to any of the cars; can we leave?" Captain Bordes told Carson that he would have to wait for the police to arrive and file a report. Carson claimed that he had not been driving the vehicle during the accident. Captain Bordes told Carson that he would still have to wait for the police. Carson then claimed he needed to go into the Walgreens to get water. Captain Bordes told him that the District

---

[3]St. Rec. Vol. 1 of 8, Bill of Information, 8/7/07.

[4]These facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Carson*, No. 2009KA1577, 2010 WL 559731, at *1-2 (La. App. 1st Cir. 2/12/10); St. Rec. Vol. 7 of 8, 1st Cir. Opinion, 2009-KA-1577, pp. 2-5, 2/12/10; *see also*, *State v. Carson*, 30 So.3d 284 (La. App. 1st Cir. 2010) (Table).

Chief was on his way to the scene, and he had drinks in his truck. Captain Bordes also told Carson that police officers were on their way to the scene. Carson responded by moving certain items from the front passenger-side of the car into the trunk.

Covington Police Department Officer Shane Maricelli responded to the scene of the accident. A check of the vehicle's registration indicated that it was registered to Carson. Officer Maricelli saw Carson rummaging through his car. He was acting nervous and anxious. Officer Maricelli ordered Carson to step away from the vehicle and stand near the trunk, and he complied. Officer Maricelli advised Carson of his *Miranda* rights, and Carson indicated that he understood those rights. Officer Maricelli asked Carson if he had anything illegal in the car, and the defendant replied, "No, sir; I don't do drugs." Thereafter, Carson stated that he had been driving around town and had accidentally run into the rear of Peyton's vehicle.

Carson consented to a search of his vehicle. A search of the trunk revealed a small black zipper bag containing eight crack pipes, rolling papers, a Brillo pad, a condom, and a film canister. The film canister contained approximately ten pills. Later, two of the pills tested positive for hydrocodone combined with another ingredient, six of the pills tested positive for oxycodone, and one pill tested positive for clonazepam. The officer also found a box of Kool cigarettes, containing some cigarettes and two rocks of crack cocaine, under the passenger seat. Carson claimed that the film canister belonged to his mother. He denied any knowledge of the crack pipes.

Two of the passengers, Chanelle Poche and Olivia Schurb, claimed to have seen a man run from the passenger side of Carson's car after the accident. They also heard Carson ask that the police not be called. Poche also saw Carson moving items from the inside of the car to the trunk before the police arrived.

Carson's brother, Kenneth Brian Carson, testified at trial that Carson suffered from mental illness since he was 16 years old. He also claimed that, whenever Carson had transportation, he would give rides to people. Kenneth claimed that although the vehicle was registered to Carson, it really belonged to their mother. Additionally, he testified that their mother always mixed her pills together and kept them in the trunk of her car. He conceded, however, that he had no evidence concerning the medications prescribed to his mother. He also conceded that Carson had the opportunity to remove their mother's pills for his personal use.

Carson was tried before a jury on October 28 and 31, 2008, and was found guilty as charged on all four counts.[5] After receiving testimony and argument, the Trial Court denied Carson's motion for new trial on April 6, 2009.[6] After waiver of legal delays, the Trial Court sentenced Carson that same day to serve five years at hard labor on each count to run concurrently.[7] The State also later filed a multiple offender bill on November 3, 2009.[8]

On direct appeal of the conviction, Carson's appointed counsel raised two errors:[9] (1) insufficient evidence of possession and that Carson was not insane at the time of the offense; and (2) the Trial Court erred in denying the motions for new trial based on denial of psychiatric medication rendering him unable him to assist his counsel. Carson also filed a supplemental brief

---

[5]St. Rec. Vol. 1 of 8, Trial Minutes, 10/28/08; Trial Minutes, 10/31/08; St. Rec. Vol. 2 of 8, Trial Transcript, 10/28/08; Trial Transcript, 10/31/08; St. Rec. Vol. 3 of 8, Trial Transcript (continued), 10/31/08.

[6]St. Rec. Vol. 1 of 8, Minute Entry, 4/6/09; Minute Entry, 2/26/09; St. Rec. Vol. 3 of 8, Motion Hearing Transcript, 4/6/09; Motion Hearing Transcript, 2/26/09.

[7]*Id.*

[8]St. Rec. Vol. 4 of 8, Multiple Bill, 11/3/09.

[9]*State v. Carson*, No. 2009KA1577, 2010 WL 559731, at *1; St. Rec. Vol. 7 of 8, 1st Cir. Opinion, 2009-KA-1577, 2/12/10; Appeal Brief, 2009-KA-1577, 9/21/09.

raising one additional error arguing that he was denied effective assistance of counsel at the hearing on the motions for new trial when counsel did not have his medical records and did not adequately cross-examine Dr. Richard Demory Inglese.

The Louisiana First Circuit affirmed his convictions and sentences on February 12, 2010, finding each of his claims to be meritless, and commenting that the ineffective assistance of counsel was not subject to appellate review.[10]  The Louisiana Supreme Court also denied Carson's related and untimely[11] filed writ application on May 20, 2011, without stated reasons.[12]

In the meantime, the Trial Court held several hearings on the multiple bill.[13]  On March 16, 2010, the Trial Court adjudicated Carson to be a second felony offender.[14]  The Court resentenced Carson on April 13, 2010, on Count Three (possession of oxycodone) to serve 9 years as a multiple offender to run concurrently with the other sentences in this case.[15]  The Court also denied Carson's

---

[10]*Id*.  The Louisiana First Circuit noted that inquiry into the effectiveness of counsel's trial strategy required a post-conviction evidentiary hearing and could not be reviewed on appeal.  The Court notes that while his appellate review was pending, on January 20, 2010, Carson was released as if on parole due to the benefits of diminution of sentence.  He was still in custody for purposes of this review.

[11]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.  His writ application was submitted by him on May 17, 2010, postmarked May 18, 2010, and filed by the Court on May 24, 2010.  St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 10-KH-1180, 5/24/10 (dated 5/17/10); St. Rec. Vol. 6 of 8, La. S. Ct. Letter, 2010-KH-1180, 5/24/10 (showing postmark of 5/18/10).  These dates fall outside of the proscribed time period.

[12]*State ex rel. Carson v. State*, 63 So.3d 975 (La. 2011); St. Rec. Vol. 8 of 8, 2010-KH-1180, La. S. Ct. Order, 5/20/11.

[13]St. Rec. Vol. 4 of 8, Multiple Bill Hearing Transcript, 3/2/10; St. Rec. Vol. 1 of 8, Multiple Bill Hearing Minutes, 11/10/09; Multiple Bill Hearing Minutes, 1/26/10; Multiple Bill Hearing Minutes, 3/2/10.

[14]St. Rec. Vol. 4 of 8, Trial Court Findings, 3/16/10; Trial Court Order, 3/16/10; Multiple Bill Hearing Transcript, 3/2/10.

[15]St. Rec. Vol. 1 of 8, Multiple Bill Sentencing Minutes, 4/13/10; St. Rec. Vol. 4 of 8, Multiple Offender Sentencing Transcript, 4/13/10.

motion to reconsider the sentence, for post-verdict judgment of acquittal, and for new trial on the multiple bill.[16]

The Court also later denied Carson's motion to correct the sentence, filed September 3, 2010, in which he argued that he completed his sentence by diminution of sentence which was before he was resentenced as a multiple offender.[17] He did not seek review of that order.

On direct appeal to the Louisiana First Circuit from the multiple offender proceedings and sentence, Carson's appointed counsel argued the Trial Court erred in denying the motion to quash the multiple bill based on the State's delay in prosecuting the bill.[18] This argument also was apparently raised by Carson in a pro se supplemental brief which is not part of the record provided here.[19] The Louisiana First Circuit affirmed his multiple offender adjudication and sentence on March 25, 2011, after finding his arguments to be meritless.[20]

On May 13, 2011, Carson filed with the Trial Court another motion seeking to vacate his sentence, which was denied without reasons on May 16, 2011.[21] In that motion, he argued that the Trial Court failed to properly sentence him as a multiple offender, he was denied the right to present mitigating evidence, the Trial Court failed to rule on his pro se motion to quash the multiple bill, he

---

[16]*Id.*

[17]St. Rec. Vol. 6 of 8, Trial Court Order, 9/13/10; Motion to Correct/Vacate Unlawful Sentence, 9/3/10.

[18]St. Rec. Vol. 8 of 8, Appeal Brief, 2010-KA-1522 (copy undated); *State v. Carson*, No. 2010KA1522, 2011 WL 1103512, at *1 (La. App. 1st Cir. 2011); St. Rec. Vol. 7 of 8, 1st Cir. Opinion, 2010-KA-1522, 3/25/11; *see also*, *State v. Carson*, 58 So.3d 1156 (La. App. 1st Cir. 2011).

[19]St. Rec. Vol. 7 of 8, 1st Cir. Opinion, 2010-KA-1522, p. 3, 3/25/11.

[20]*State v. Carson*, No. 2010KA1522, 2011 WL 1103512, at *1; St. Rec. Vol. 7 of 8, 1st Cir. Opinion, 2010-KA-1522, 3/25/11; *see also*, *State v. Carson*, 58 So.3d at 1156. While these proceedings were pending, Carson filed various post-conviction motions with the state trial court challenging his sentence and other matters, none of which are relevant to the resolution of this case at this time.

[21]St. Rec. Vol. 6 of 8, Trial Court Order, 5/16/11; Motion to Correct/Vacate Unlawful Sentence, 5/13/11.

was not warned of the right against self incrimination, and had no counsel immediately after the multiple bill was filed.

Carson sought review of this order by raising only two arguments to the Louisiana First Circuit: (1) the record on appeal did not contain a ruling on his motion to quash the multiple bill; and (2) the Trial Court erred in denying the motion to suppress his statements in response to the multiple bill during which he was without counsel. The appellate court denied Carson's related writ application on August 1, 2011.[22] He did not seek further review of this order.

Thereafter, on February 17, 2012, the Louisiana Supreme Court denied without stated reasons Carson's writ application seeking review of the Louisiana First Circuit's March 25, 2011, opinion affirming his multiple offender proceedings.[23] Carson's conviction became final 90 days later, on May 17, 2012, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

## II.    **Federal Petition**

On April 9, 2012, the clerk of this Court filed Carson's petition for federal habeas corpus relief in which he raised the following grounds for relief:[24] (1) the multiple offender proceedings was unduly delayed causing him undue prejudice in violation of his right to a speedy trial; (2) ineffective

---

[22]St. Rec. Vol. 8 of 8, 1st Cir. Order, 2011-KW-0993, 8/1/11; 1st Cir. Writ Application, 2011-KW-0993, dated 5/26/11.

[23]*State ex rel. Carson v. State*, 82 So.3d 280 (La. 2012); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2011-KH-0894, 2/17/12; La. S. Ct. Writ Application, 2011-KH-0894, dated 4/22/11; St. Rec. Vol. 6 of 8, La. S. Ct. Letter, 2011-KH-894, 5/2/11 (showing postal meter of 4/26/11).

[24]Rec. Doc. No. 1.

assistance of counsel during the multiple offender proceeding; (3) denial of the right to discovery during the multiple offender proceeding where he was without counsel to benefit from open file discovery offered by the State; (4) his right to remain silent was violated when he was compelled to answer to the multiple bill; (5) his rights against double jeopardy were violated because he had completed the underlying sentence due to diminution of sentence before the enhanced sentence was imposed; and (6) denial of a complete record on appeal when the record did not include the motion to quash the multiple bill.

Recognizing only five of Carson's six grounds, the State filed an answer and memorandum in opposition to Carson's petition. The State concedes the timeliness of the petition and recognizes that Carson has exhausted one claim, while he only raised portions of his other claims to the Louisiana Supreme Court without first raising them in the lower state courts. Contrary to the law, the State suggests that, under a broad reading, this was sufficient to satisfy federal exhaustion requirements. In addition, the State argues that Carson's claims raise only issues of state law and fail to present issues cognizable on federal habeas review.[25] Alternatively, the State argues without significant analysis that the claims are without merit.

Carson filed a traverse to the State's opposition where he concedes that his claims are not fully exhausted and were not part of the appellate record.[26] He suggests that he raised the issues again in later-filed motions to the Trial Court. Carson also argues that the State failed to address the "objective reasonableness" standard and failed to discuss all of his arguments. Although often nonsensical, Carson attempts to reiterate arguments in support of the merits of his claims.

_____

[25]Rec. Doc. Nos. 11, 12.

[26]Rec. Doc. Nos. 13, 14.

**III.    General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this court under the federal mailbox rule on March 18, 2012.[28] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes and the record reflects that Carson's petition was timely filed. The State, however, incorrectly concludes that Carson's claims are exhausted under some contrived notion of a broad reading of state supreme court pleadings. This conclusion was apparently based on the State's incorrect assessment of the law and is not supported by the record. Carson has failed to properly exhaust state court remedies as to several of the six claims raised. As discussed below, the exhaustion doctrine requires that Carson present each of his claims and arguments in a procedurally proper manner to every available level of the state courts. This basic legal premise was

---

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Carson's federal habeas petition on April 9, 2012, when pauper status was granted. Carson dated his signature on the petition on March 18, 2012. This is the earliest date on which he could have delivered it to prison officials for mailing.

completely overlooked by the State. For the following reasons, the Court finds that Carson has not fully exhausted state court remedies.

## IV.    Exhaustion Requirement

As discussed below, exhaustion requires presentation of each claim and legal theory through each required level of state court review. Carson did not do this as to all claims raised herein. Simply presenting a claim to a higher state court does not comply with and is contrary to Louisiana's procedural requirements.

The Court finds that the State erred in resolving that Carson exhausted state court remedies, and this error does not constitute a valid or express waiver of exhaustion. The Court therefore raises Carson's failure to exhaust *sua sponte*. *McGee v. Estelle*, 722 F. 2d 1206, 1214 (5th Cir. 1984) (*en banc*); *see also*, 28 U.S.C. § 2254(b)(3) (the State's failure to raise exhaustion is not a waiver of the defense).

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is** *sua sponte* **raising the issue of exhaustion and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). This means that "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

The record demonstrates that Carson has presented to this federal court several grounds for relief that were not properly exhausted in the state courts. A thorough reading of Carson's state and federal pleadings reveals that his first claim, untimely habitual offender proceedings, was presented on direct appeal and then to the Louisiana Supreme Court in a procedurally proper manner. Even under the broad reading suggested by the State, however, Carson has not presented the remaining claims in a consistent or complete manner through the state courts.

For example, in his first writ application to the Louisiana Supreme Court after the first direct appeal, he raised only one claim alleging that he was denied medication during trial. That claim is not raised in this federal petition.

In his second appeal following the multiple offender sentencing, he and his counsel argued one claim to the Louisiana First Circuit, undue delay in the prosecution of his multiple bill while the State attempted to obtain records from Florida. This claim was later raised before the Louisiana Supreme Court and is exhausted.

In his 2011 motion to vacate, he argued that the Trial Court failed to properly sentence him as a multiple offender, he was denied the right to present mitigating evidence, the Trial Court failed to rule on his pro se motion to quash the multiple bill, he was not warned of the right against self-incrimination, and he was without counsel the months immediately following the filing of the multiple bill. However, when he sought review of the denial of that motion, he raised only two arguments to the Louisiana First Circuit: (1) the record on appeal did not contain a ruling on his motion to quash the multiple bill; and (2) the Trial Court erred in denying the motion to suppress his statements in response to the multiple bill during which he was without counsel.

On review in the Louisiana Supreme Court after the second appeal, he argued *inter alia* that the State delayed the multiple offender proceedings, his motion to quash was not addressed by the state trial court, he was not immediately assigned counsel, he was unable to conduct discovery from jail, his rights against self-incrimination were violated, and he was resentenced as a multiple offender after he completed the underlying sentence.

In this federal petition, Carson raises the undue delay claim and some of the same arguments in support of that claim and challenges the Trial Court's failure to rule on his pro se motion to quash

the multiple bill. He did not, however, present the other claims raised here to the Louisiana First Circuit. He also arguably failed to present the remaining claims as distinct issues in his Louisiana Supreme Court writ application. As an example, Carson did not specifically raise an ineffective assistance of counsel claim; he only argued that the lack of counsel prevented him from completing discovery and resulted in his providing information to the State without being first advised of his right not to testify against himself. These arguments were presented as factors under the delayed prosecution issue not as separate and distinct issues. The Court recognizes that Carson also mentions double jeopardy in that Louisiana Supreme Court writ application. It, however, also is mentioned in the context of one factor of the delayed prosecution claim, not as a separate issue. Assuming he intended to raise these as separate issues, the claims were not presented to the lower appellate court and are not properly exhausted.

In sum, taking each of his pleadings together, Carson has exhausted his claims of delay prosecution of the multiple bill, and arguably his claim regarding the Trial Court's failure to rule on his pro se motion to quash. Carson has not specifically raised to the state courts in a complete round of review his claims of ineffective assistance of counsel during the multiple offender proceeding, denial of the right to discovery during the multiple offender proceeding where he was without counsel to benefit from open file discovery offered by the State, violation of his right to remain silent when he was compelled to answer to the multiple bill, violation of his rights against double jeopardy because he had completed the underlying sentence due to diminution of sentence before the enhanced sentence was imposed, or denial of a complete record on appeal.

The exhaustion requirement is satisfied when the substance of each claim has been fairly presented to each of the state courts through to the highest court of the state in a procedurally proper

13

manner. *See O'Sullivan*, 526 U.S. at 842; *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). Carson has failed to exhaust state court remedies before bringing his claims to this federal court. His hodgepodge and incomplete presentation of arguments in the state courts is not proper exhaustion. As noted above, the exhaustion requirement is satisfied when the substance of each claim has been fairly presented to the state's highest court in a <u>procedurally proper manner</u>. *O'Sullivan*, 526 U.S. at 842; *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999).

This conclusion is still true to the extent he intended to raise the individual claims for the first time to the Louisiana Supreme Court. Under Louisiana law, post-conviction claims not raised on appeal must be first asserted in a uniform application for post-conviction relief in the state district court. *See* La. Code Crim. P. art. 926(A). A petitioner who bypasses that requirement and asserts a post-conviction claim in the first instance in the state's highest court has not met the federal exhaustion requirement. Such a claim would not have been presented to the Louisiana Supreme Court in a procedurally proper manner. Therefore, that court never had a "fair opportunity" to pass judgment on the claim. *Mercadel*, 179 F.3d at 275; *see also*, *Morace v. Cain*, 193 F.3d 517, 1999 WL 706167, at *1 (5th Cir. Aug. 20, 1999) (Table, Text in Westlaw); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

The record discloses no good cause for Carson's failure to properly and fully exhaust all of his claims and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269,

277-78 (2005). Therefore, Carson's mixed petition, presenting both exhausted and unexhausted claims, should be dismissed without prejudice to allow him to pursue complete exhaustion, unless he chooses to dismiss the unexhausted claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Carson's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[29]

New Orleans, Louisiana, this 27th day of July, 2012.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[29]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.